# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 89 C 6111 | **DATE** | 9/5/2002 |
| **CASE TITLE** | Robinson vs. Northrop Grumman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Plaintiff relators' motion to compel depositions of Burks Terry and Bonnie Webster-Kwolek [660-1] is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | (0) number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP - 6 2002 date docketed | 802 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9/5/2002 date mailed notice | |
| KF | courtroom deputy's initials | | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel, REX A. ROBINSON, and JAMES H. HOLZRICHTER, ) ) ) ) | |
| Plaintiffs, ) | No. 89 C 6111 |
| ) | |
| v. ) | Hon. Ronald A. Guzman |
| ) | |
| NORTHROP GRUMMAN CORPORATION, ) ) ) | Mag. Judge Mason |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

As both parties in this case are well aware, before this Court are a number of interconnected motions all concerning, essentially, an issue wholly separate from the merits of this case: whether defendant Northrop Grumman Corp. ("Northrop") has abused discovery in such a way as to justify an issuance of sanctions. Underlying the many accusations by the plaintiffs/relators in this *qui tam* action for accounting fraud is the argument that Northrop has wrongly withheld numerous documents on the grounds that they are protected by the attorney-client privilege, when, in fact, the documents are not privileged. At the center of the dispute is a 1987 report (as well as related work papers, drafts and letters) created by independent accounting firm Arthur Young & Co ("AY"). The plaintiffs want to get their hands on this report, and Northrop has steadfastly insisted that it is privileged; created, it contends, in response to an engagement by Northrop's legal department.



In order to prove their theory that no privilege attaches to AY's work, the relators have moved to compel the deposition of Northrop's in-house counsel, Burks Terry.[1] Terry has claimed – in affidavits submitted in this case -- that he engaged AY in August, 1987 to perform a short, initial self-critical analysis of Northrop's material control practices and procedures from a legal perspective prior to Northrop hiring AY for a larger, non-privileged review of the same issues.[2] Terry contends that he initiated the first audit ("First Review") at the direction of the head of Northrop's Defense Systems Division, Wallace Solberg, and that he coordinated AY's efforts with members of Northrop's non-legal materials management council (the "Council") and obtained their assistance with the project. After the one-month First Review was completed, the Council did in fact engage Arthur Young a second time to perform a more comprehensive non-legal, non-privileged audit (the "Second Review"). Northrop has produced documents related to the Second Review, but has consistently refused to produce the first Arthur Young report, or any of the work papers or drafts which support this report.[3]

The relators have long claimed that the First Review is not truly privileged, and that Terry improperly funneled the work through the legal department to be able to shield it from

---

[1] The relators have also moved to depose Northrop paralegal Bonnie Webster-Kwolek. We will address this request at the end of our opinion, since it is mostly unrelated to the other issues discussed here.

[2] Northrop was at the time (and still is) a government defense contractor. At the time the Arthur Young work was performed, the government was planning to undertake comprehensive audits of many of its contractors' "material resource planning" ("MRP") systems.

[3] As we mentioned above, also pending before us are several other motions related to Arthur Young, most notably Northrop's motion for a protective order relating to an allegedly privileged document that it inadvertently produced and a cross motion to compel production of all Arthur Young material by the relators. Also pending are cross motions for sanctions by each party against the other. If we grant the relators' motion and allow them to depose Terry, we anticipate that the parties will request the opportunity to supplement some of their other pending motions.

2

disclosure. Throughout the course of this litigation, the relators have proffered numerous reasons to depose Terry. At this point, however, the major reason for requesting Terry's deposition is that the relators wish to question him regarding the two affidavits he submitted regarding Arthur Young and his retention of the company to provide a privileged audit.[4]

A court will only allow the deposition of an opposing party's attorney under certain circumstances. The party seeking the deposition must show that, 1) no other means exist to obtain the information; 2) the information sought is relevant and non-privileged, and 3) the information is crucial to the preparation of the case. See *Prevue Pet Products, Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 418 (N.D.Ill. 2001). In cases where there is a question about whether the topics for deposition will cover privileged information, the proper course of action is to allow the deposition to go forward, allowing the attorney to claim privilege in response to specific questions. See *Hunt v. Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill. 1983) (citations omitted).

In order to make a decision regarding Terry's deposition, it is necessary for us to set forth some of the facts and allegations surrounding the creation of the allegedly privileged Arthur Young report. The main point of disagreement is whether this first audit by Arthur Young – which began in mid-August, 1987 and lasted approximately one month – was a wholly separate project undertaken, planned and instituted by the legal department, or else was connected to Arthur Young's later work for Northrop's materials management council.

---

[4] In their earlier briefs, the plaintiffs indicated that they also wished to question Terry about the termination of relator Robinson as well as the allegations raised by the relators in their affidavits. Neither of these reasons justify ordering Terry's deposition. First, the depositions of each of the affiants demonstrated little, if any involvement with the identification of privileged documents for this case, and little involvement with Terry. As for the reasons for Robinson's termination, there is little or no evidence that Terry was intimately involved with the termination, or that the Terry's deposition would provide any information beyond that available from Robinson's two supervisors.

Terry contends via affidavit that he was directed by Solberg to engage Arthur Young for a privileged review, and that he enlisted the help of non-lawyers Jack McNaughton and Ken Beazley, members of the Council, to help direct the work. The following documentary evidence is relevant to our analysis:

1.  An August 7, 1987, letter from Arthur Young to Jack McNaughton regarding an engagement to last from August 18 until September 11, 1987. The letter stated, among other things, that the primary focus of the review "is systems practices and procedures that relate to MRP in light of the 10 DCAA points. The primary emphasis will be the materials aspect of the operations,..." This document originally appeared on a Northrop privilege log but has since been produced.

2.  An August 10, 1987 letter from Arthur Young to McNaughton. This letter proposes that Arthur Young will undertake a quick review and analysis of Northrop's DSD system, prior to Northrop conducting a later, complete review of existing manufacturing, financial, and government reporting systems. Arthur Young informed Northrop that at the end of this quick review (to last 15-20 days), it would provide a draft report and presentation of its conclusions. Again, Arthur Young indicates that it plans to undertake this project from August 18 until September 11, 1987. This document originally appeared on a Northrop privilege log but has since been produced.

3.  An August 14, 1987 memo from McNaughton to an E. Foley (who has been identified as a non-lawyer at Northrop), regarding the retention of Arthur Young for the above project. The memo mentions that the coordinator for the project and Arthur Young liaison would be Ken Beazley and names several other non-lawyers who would be involved in the project. The memo does not mention the legal department at all. This document did not appear on a Northrop privilege list and was produced in the ordinary course of discovery.

4.  A letter from Burks Terry to Arthur Young dated August 14, 1987, submitted to the Court *in camera*. This letter retains Arthur Young for a privileged regulatory compliance review. This document appears in Northrop's privilege log.

5.  An August 17, 1987 memo from Ken Beazley to the members of the materials management council and a copy to McNaughton informing them about the Arthur Young project and enlisting their help and support. This memo did not appear on a privilege log and was produced in the ordinary course of discovery.

4

6. An August 21, 1987 memo from Beazley to McNaughton about the status of the Arthur Young project. At the end of the memo, it states, "[t]his project is structured such that Arthur Young is engaged through Burks Terry as Division Counsel, so that attorney/client privilege is established." This document did not appear on a privilege log and was produced in the ordinary course of discovery.

In addition to the documents listed above, Terry provided two affidavits on the issue. The first concerned a document known as "privileged document B" which was inadvertently produced to the plaintiffs and has not yet been returned. Privileged document B is part of a draft report prepared by Arthur Young related to the audit it performed in August and September, 1987. Terry's second affidavit discusses his retention of Arthur Young directly, and states that the retention was a result of his discussions with Solberg, who asked Terry to provide Northrop with legal advice concerning Northrop's material control practices. In this affidavit, Terry states that after retaining Arthur Young on August 14, 1987, he consulted with McNaughton and Beazley to help him understand the financial aspects of any compliance issues. In addition to privileged document B, Arthur Young also produced a privileged final report in connection with this engagement.

In the course of discovery on the issue of whether Northrop improperly "funneled" non-privileged documents through the legal department to avoid their production, the relators took the depositions of Solberg, Beazley, McNaughton and another employee named Ken Chapman. None of these witnesses were able to remember very much about the one-month engagement of AY in August of 1987, and whether it occurred at the direction of the legal department or the Council. Solberg, who allegedly directed Terry to engage AY, expressed surprise that AY was engaged through Terry, as opposed to McNaughton. While Solberg was unable to remember many details of any aspect of his

work at Northrop during this time, his testimony definitely does not confirm Terry's explanation of the engagement of AY. McNaughton and Chapman simply have no memory of the structure of this first AY engagement. Although, as Northrop points out, it is not unreasonable to find that the witnesses have little memory about a month-long project that had occurred nearly fifteen years before, the deposition testimony certainly does not substantiate Terry's affidavits.

In sum, although some of the evidence may lend credence to the plaintiffs' theory of discovery abuse by Northrop (or at least to the idea that the First Review might have been originally conceived as a non-legal project), we do not believe that allowing the deposition of Terry to occur would assist in our analysis of the privilege issue, as opposed to merely leading to additional briefing, delay, and argument. Terry and Northrop have their version of the structure and purpose of the First Review and the plaintiffs have theirs. The documents say what they say and none of the other relevant actors remember much of significance. We cannot imagine that Terry's deposition will change any of the facts, and assume that he would refuse to answer on privilege grounds many of the questions posed to him. The parties have both made their arguments for and against the assertion of privilege with regard to the First Review, and we will use these arguments to make our determination. Therefore, the relators' motion to depose Burks Terry is denied.

As for the deposition of paralegal Webster-Kwolek, we deny the plaintiffs' request. They wish to depose her regarding an affidavit she submitted in 1999 about her search for so-called "Chapman Attrition Documents." Both Judge Rosemond and Judge Moran have already examined Webster-Kwolek's affidavit and deemed the search for documents that she coordinated was sufficient. The relators contend that new deposition testimony from

6

Ken Chapman contradicts the affidavit. At his deposition, Chapman testified that he did not recall searching his files in 1987 for his attrition calculations as Webster-Kwolek stated that she asked him to do, although he did search his files in 1989 for these very same documents, which were produced for the grand jury (and, Northrop contends, to the relators).

The affidavit also explains that Webster-Kwolek produced documents dated after the alleged wrongdoing in the case (from 1990 onward), because these were the documents described by employee Jack Doyle in his deposition, and it was these documents that Northrop was ordered to produce. The fact that Chapman testified that he began calculating attrition rates in 1986 does not alter the fact that Northrop was ordered to search for documents as described by Doyle. There is no evidence that Chapman's early attrition calculations fall within this description.[5] Additionally, as with our decision regarding Terry's deposition, at this point, we believe that deposing Webster-Kwolek about events that occurred nearly fifteen years ago would be more complicating than helpful. The mere fact that Chapman does not recall searching for documents in 1987 does not demonstrate that he did not in fact conduct such a search, or that Northrop did not obtain the documents at another time and produce them to the relators. We simply do not believe that opening up the question of Webster-Kwolek's search for the Chapman attrition documents yet again would be helpful.

For the above reasons, the relators' motion to depose Burks Terry and Bonnie

---

[5] In any event, Webster-Kwolek's affidavit specifically states that she searched for any attrition calculations, no matter what the methodology, from 1987 on, and produced any documents she found to the plaintiffs. Further, James Haas, who assisted Webster-Kwolek in her search for attrition documents, testified at his deposition that the detailed attrition calculations Northrop used in 1990 were not created in the same format prior to that time.

7

Webster-Kwolek is denied. It is so ordered.

ENTER:

_____
MICHAEL T. MASON
United States Magistrate Judge


Dated:   September 5, 2002