Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 89 C 6111 | DATE | 9/23/2002 |
| CASE TITLE | USA, ex rel., REX A. ROBINSON vs. NORTHROP GRUMMAN | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in this Memorandum Opinion and Order, defendant's motion to dismiss [654-1] is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | SEP 2 6 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 807 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 02 SEP 25 PM 3:16 | date mailed notice | |
| | CG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES OF AMERICA, ex rel. )
REX A. ROBINSON, and )
JAMES H. HOLZRICHTER, )
)
    Plaintiffs, )
)
v. ) 89 C 6111
)
NORTHROP GRUMMAN ) Judge Ronald A. Guzmán
CORPORATION, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

In 1989, plaintiffs Rex A. Robinson and James H. Holzrichter ("the relators") brought this *qui tam* action against Northrop, and in 2001, the government intervened. Before the Court is Northrop's motion to dismiss the relators and the government's fourth amended complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). For the reasons stated below, the motion is denied.

Northrop argues that particular allegations in the fourth amended complaints violate Judge Moran's April 13, 1998 and February 1, 1999 orders. In his April 13, 1998 order, Judge Moran granted in part and denied in part plaintiffs' motion to file their proposed second amended complaint and allowed only those amendments specifically relating to: (1) damages and how the alleged fraudulent accounting, which includes various alleged deficiencies in the handling of inventory and scrap, impacted contract proposals and the pricing of those contracts involving the B-1 Program, F-15 Program, SP-3 Program, and AN/ALQ 162 Program; and (2) fraud allegations regarding the development and progress of the prime SP-3 product, the ZSR-62. (*See* 4/13/98 Order at 1-3.) In his February 1, 1999 order, Judge Moran granted Northrop's

807

motion to dismiss the filed second amended complaint and in doing so he iterated that the intent of the April 13, 1998 order was to "limit the expansion to damages rising from allegedly fraudulent scrap accounting flowing into specific contract proposals and to the impact of an allegedly fraudulent testing and development process with respect to the ZSR-62." (2/1/99 Order at 2.) In addition, he clarified the previous order by granting plaintiffs leave to include the following three programs: the B-52 ECM program, EO/IR program, and M&O Spares program. (*Id.*)

According to Northrop, the following paragraphs violate Judge Moran's previous orders: paragraphs 4, 33,[1] 38-39, 49, 51-52, 54-72, and 81 of the relators' fourth amended complaint ("RFAC") and the parallel allegations in paragraphs 3, 31, 36-37, 46, 48-49, 51-69, and 78 of the government's fourth amended complaint ("GFAC"). (*See* Def.'s Reply Br., Ex. 1 ("Def.'s Ex. 1").) The Court addresses each paragraph in turn.

First, with regard to paragraphs 4, 33, and 81 of the RFAC and paragraphs 3, 31 and 78 of the GFAC, Northrop argues that the allegations of fraudulent representations regarding the progress of work on the SP-3 prime work product, the ZSR-62, violate Judge Moran's orders. The Court disagrees. Judge Moran specifically discussed and allowed amendments with respect to progress reports about certain components of the ZSR-62 because of the difficulty of separating the testing and progress of the ZSR-62 from the ongoing results. To the extent that Northrop seeks through its motion to dismiss to have this Court revisit any of Judge Moran's rulings or to address any issues that Northrop could and should have raised before Judge Moran, the Court declines to do so. Accordingly, Northrop's argument concerning relation back is

---

[1] Although Northrop cites paragraph 32, it is clear that Northrop meant to cite paragraph 33 of the relators' fourth amended complaint because paragraph 32 merely describes the SP-3 program.

barred by the law of the case doctrine. Further, the allegations in paragraphs 4, 33, and 81 of the RFAC and paragraphs 3, 31 and 78 of the GFAC sufficiently set out the 'who, what, when, where, and how' of the alleged fraud with sufficient specificity to give Northrop notice of the claim against it. Thus, the Court denies Northrop's motion to dismiss these paragraphs of the RFAC and GFAC.

Next, Northrop argues that the allegations in paragraphs 38-39 of the RFAC and paragraphs 36-37 of the GFAC regarding inflation, recording and presentation of scrap, attrition, and material costs in billing and proposals violate Judge Moran's prior orders. Again, the Court disagrees. Judge Moran granted plaintiffs leave to file amendments with regard to the impact on billing and contract proposal pricing, *i.e.*, damages, caused by the alleged fraudulent handling of inventory and scrap. Further, Northrop's overly broad reading of those allegations to encompass unidentified and amorphous fraud is belied by the limiting language contained therein. As such, the allegations in those paragraphs are clearly limited to how the fraud impacted proposals and billing for programs which were specifically allowed by Judge Moran, *i.e.*, the B-1 Program, the F-15 Program, the SP-3 Program, the AN/ALQ 162 Program, the B-52 ECM Program, the EO/IR Program, and the M&O Spares Program. Because these allegations relate to damages and not fraud, Northrop's Rule 9(b) argument is moot. Northrop's motion to dismiss these paragraphs is denied.

With regard to paragraph 49 of the RFAC and paragraph 46 of the GFAC, it is apparent from the parties' briefs that they are in agreement that the allegations regarding the April 1989 Attrition Committee meeting relate only to Northrop's handling of the $9-11 million of obsolete inventory which was the subject of relators' 1993 amended complaint. (*See* Am. Compl. ¶¶ 14-18.) Therefore, the Court denies as moot Northrop's motion to dismiss these paragraphs.

3

Next, plaintiffs argue that paragraphs 51-52 of the RFAC and paragraphs 48-49 of the GFAC relating to the allegation that Northrop's inflated scrap problem was "widespread across all programs at DSD" violate Judge Moran's orders. From its inception, this case has involved the alleged deficiencies in the handling of inventory and scrap. Judge Moran's orders of April 13, 1998 and February 1, 1999 specifically permitted plaintiffs to amend their complaint to add allegations that such deficiencies impacted certain specified programs ("the Programs") in terms of damages. Again, because the allegations in paragraphs 51-52 of the RFAC and paragraphs 48-49 of the GFAC relate to damages and not fraud, Northrop's Rule 9(b) argument is moot. The Court reads these allegations to relate to "all [P]rograms at DSD" (with a capital "P", not a lower case one as provided in the RFAC and GFAC), and accordingly the motion is denied. Plaintiffs, however, shall not rely on such paragraphs to support allegations as to any program other than those specifically addressed by Judge Moran. Further, the allegation in paragraph 39 of the RFAC and paragraph 37 of the GFAC that the fraud impacted the Programs by allowing Northrop to avoid penalties by hiding violations of contractual provisions goes to damages and as such was previously permitted by Judge Moran.

Finally, Northrop argues that paragraphs 54, 68 and 71 of the RFAC and paragraphs 51, 65, and 68 of the GFAC violate Judge Moran's orders because these paragraphs purportedly include new theories regarding plaintiffs' allegations of Northrop's financial reconciliation fraud. Plaintiffs allege that the financial reconciliation fraud involved the manipulation of inventory to hide overcharges resulting from inflated bills for material and scrap and to avoid adjustments to material accounting and financial records (to cover up misuse and nondisclosure of excess and residual inventory) which Northrop used to substantiate contract proposals and to bill the United States for material costs. The amended complaint filed in 1993 described in

4

sufficient detail the manipulation of inventory as described in more detail in the fourth amended complaints. (*See, e.g.*, Am. Compl. ¶¶ 16, 18, 19, 20-21, 23, 27.) The Court thus finds that the allegations which fully describe the entire scope of the alleged financial reconciliation fraud in paragraphs 54-72 of the RFAC and 51-69 of the GFAC do not allege new fraud schemes. Accordingly the Court finds that these allegations comply with Rule 9(b). These paragraphs also allege that the manipulation of inventory impacted the contract proposals in the Programs, and such an amendment was specifically permitted by Judge Moran.

In sum, Northrop's motion to dismiss is denied. The Court holds that all of the amendments which Northrop views as improper are, in fact, proper and comply with Judge Moran's April 13, 1998 and February 1, 1999 orders, as well as Rule 9(b). The Court sees no prejudice in allowing these amendments because Northrop, as well as the relators, were aware of the specific parameters of the litigation set by Judge Moran's rulings many years prior to the closing dates of fact and expert discovery, dates which the Court shall not extend based on its ruling today.

### Conclusion

For the reasons set forth in this Memorandum Opinion and Order, defendant's motion to dismiss [doc. no. 654-1] is denied.

SO ORDERED:  ENTER 9/23/02

HON. RONALD A. GUZMAN
**United States Judge**