# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 89 C 6111 | **DATE** | 6/19/2003 |
| **CASE TITLE** | Robinson vs. Northrop Grumman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' motion to compel pursuant to the November 4 Order and Northrop's November 6 answer [828-1] is granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 11 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 0 2003 | 853 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 6/19/2003 | |
| ✓ | Copy to judge/magistrate judge. | 03 JUN 19 AM 11:35 | date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 2 0 2003

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel, REX A. ROBINSON, and JAMES H. HOLZRICHTER, <br><br>Plaintiffs, <br><br>v. <br><br>NORTHROP GRUMMAN CORPORATION, <br><br>Defendant. | No. 89 C 6111 <br><br>Hon. Ronald A. Guzman <br><br>Mag. Judge Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

On November 4, 2002, we issued an order regarding, *inter alia*, Northrop's claim of attorney-client privilege over certain documents created by independent auditor Arthur Young & Company ("AY"), which had performed several reviews of Northrop's materials management systems in the late 1980's. In our order, we found that the majority of the documents AY used in its first, allegedly privileged review of Northrop's systems (the "First Review"), were indeed protected because the entire purpose of the First Review was to provide legal advice to Northrop. However, we ordered Northrop to provide additional explanation for one document, ("Document 355") which consisted of interview notes dated after the completion of the First Review. We also ordered Northrop to produce any documents which had been created for the First Review, but which were also used in any way by AY to complete its second, non-privileged review of Northrop's systems ("Second Review").



The plaintiffs argue that, not only has Northrop failed to establish that withheld AY documents are protected by the attorney-client privilege, it waived any privilege that may have existed by placing the documents at issue in its affirmative defenses to the complaint. As we explain below, we find that Northrop has not adequately established that certain withheld documents are protected by the attorney-client privilege, and thus order that they be produced.

As both parties are aware, the standards for determining whether a document is protected by the attorney-client privilege is as follows: 1) Where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or the legal advisor, 8) except the protection may be waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The burden is on the party asserting the privilege to show that all the elements are met. *Id.* Further, in analyzing the privilege, we must consider the documents individually, on a "document-by-document basis."

Because the First Review and the Second Review involved audits of the same materials management system, the facts supporting AY's analyses on both projects and some of their conclusions were similar, leading the relators to form the inference that AY may have used the same work papers for both projects. Since our November 4, 2002 order found that the First Review was indeed performed for a privileged purpose – to help Northrop lawyers analyze potential legal risks to the company – the documents AY created to produce the First Review were also privileged. However, this protection only extended to documents that were not used for the Second Review, that is, documents for which

2

Northrop had not waived the privilege.

Document 355 is one AY work paper about which we had a question. It consists of two seemingly unrelated write-ups, presumably by an AY employee, of interviews[1] with Northrop's Ken Chapman. The first write-up is dated December 18, 1987 and the second is undated, but bears the notation "Northrop Attorney Work Product". Northrop argues that the second write-up is privileged because it relates directly to matters discussed in the First Review. Further, it contends that the December 18, 1987 interview notes are privileged as well because they were stapled to the privileged document, and also because the subject matter of this interview relates to the subject matter of a privileged AY report prepared in December, 1987 ("December Report"). In reviewing this document, we do not find that Northrop has adequately established the privilege for either set of interview notes. In reviewing the December notes, we do not find that they relate so closely to the December Report that they must have been prepared for that report. This is especially the case because in December, 1987, AY was also working on the non-privileged Second Review, which covered many of the same facts and issues of the First Review. As for the non-dated notes, there is no evidence to support Northrop's argument that they were created in August or September, 1987 for the First Review as opposed to later, for the Second Review.[2] We thus order Northrop to produce document 355.

---

[1] We cannot tell from the face of the documents whether the information came from a single interview or two different interviews.

[2] We find it somewhat ironic that in previous motions before the Court, Northrop strived to demonstrate the factual similarities between the First and Second Reviews in order to prove that the relators were privy to all relevant facts concerning the analysis of Northrop's systems, and that only the legal communications were withheld, whereas here, Northrop argues that it can "tell" that document 355 must have been created for the first review because of its content.

3

Next, Northrop produced a privilege log of the working papers AY used to complete the First Review. Many of the withheld documents consist of notes of interviews with Northrop employees created by AY personnel; some contain dates that place them within the time period of the First Review and some are undated.[3] Northrop argues that all of the documents were unquestionably used during the First Review, since they appear in binders of work papers produced by AY and relate to issues discussed in the First Review. With the exception of the interview notes dated 7/20/87, we agree that the documents were most likely first created and used for the First Review, and thus are privileged unless Northrop waived the privilege (through AY), by incorporating these documents into the Second Review.

First, we find that the one document which is dated outside the time of the First Review is not privileged. This document consists of handwritten notes of interviews with Northrop employees dated 7/20/87, and thus was created prior to the start of the privileged First Review. As Northrop itself argues in its response brief, the privilege does not attach to the facts contained in this document merely because they were later incorporated into the First Review, it attaches to privileged communications. *United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986). When this document was created, there was no privileged engagement, so the interview itself could not be privileged.

A trickier question is how we should weigh the lack of evidence either supporting **or** refuting the plaintiffs' contention that the remaining interview notes must have been used for the Second Review. If they were so used, the privilege is destroyed. The relators

---

[3] One additional document is dated 7/20/87, which places its creation at a time prior to the beginning of the First Review.

4

argue that the lack of basic information on some of the interview notes such as dates and identification of recipients prevents Northrop from establishing that the privilege, if it ever applied to these documents, was not waived. *See, e.g., In re General Instrument Corp. Sec. Lit.*, 190 F.R.D. 527, 531 (N.D.Ill. 2000). Given the unique set of circumstances regarding the creation of these documents, i.e., that they are interviews of non-attorneys taken by outside auditors for the purpose of creating either a privileged analysis or a non-privileged analysis, or both, for Northrop, we agree that the lack of specific information about the interviews damages Northrop's claim that the documents are in fact privileged.

Adding to Northrop's problem is its admission that it really has no way of knowing whether AY employees might have used some of the notes for both projects. The plaintiffs argue that since Northrop cannot prove that AY personnel did not use the interviews for the Second Review, we should order that the documents be produced. Northrop counters that although it is possible that AY personnel relied on the facts it learned during the interviews when creating the Second Review, there is no evidence that AY actually used the documents themselves, and thus the communications are still privileged.

In this case, we find that Northrop has not sustained its burden of demonstrating that the interview notes were not used for the Second Review. Northrop previously admitted that AY would be interviewing Northrop employees for both the First and Second Review. However, it has neither produced nor identified any interview notes which were created for the Second Review, leading to the inference that AY relied on its original interviews for both projects.[4] Further, the plaintiffs point out that some of the reports and

---

[4] Northrop suggests that AY personnel merely used their institutional knowledge of Northrop, rather
(continued...)

5

other documents created as part of the Second Review identify specific Northrop employees as well as interview notes from AY personnel as sources of information.[5] According to the plaintiffs, none of these work papers have been produced, and if they existed in separate binders dedicated to the Second Review, Northrop would have already given them to the plaintiffs.

Given the questions surrounding the interview notes from AY, and especially considering the fact that many of the notes are undated or otherwise lacking basic information about their use and purpose, we find that Northrop has not sustained its burden of proving that the interview notes were not used in the Second Review, and thus order that they be produced.

Volume three of AY's work papers consists of memoranda that were created during the pendency of the First Review which relate to issues analyzed during the First Review. Unlike the interview notes, these documents are communications regarding the First Review; although the underlying facts supporting them are not privileged, these communications are privileged and do not have to be produced.

Finally, we disagree with the plaintiffs that Northrop waived the privilege over the

---

[4](...continued)
than specific interview notes, when working on the Second Review. We find this contention speculative at best, especially since Northrop has previously admitted that it needed to conduct interviews for both the First and Second Reviews.

[5] Specifically, exhibit 8 to the plaintiffs' motion consists of part of the Second Review and lists various sources of the information contained therein. For example, it identifies as sources, "Ken Chapman, Manager of Financial Systems" and "Carol Graves, Interview Notes of 8/21/87." Northrop argues that AY must not have used notes from its interviews with Chapman, since it does not specifically identify them as a source. However, the only specific interview notes AY identifies were created by AY personnel Graves and Fred Balboni; Northrop employee sources were identified merely by name. We cannot tell from the documents which Northrop employees were the subject of Graves' and Balboni's interviews. It is entirely possible that Graves' and Balboni's interview notes came directly from interviews of Chapman and other Northrop employees and were used for both Reviews.

6

subject matter of the AY documents by placing them at issue in its affirmative defenses. The crux of these affirmative defenses is that Northrop should not be responsible for conduct of which the Government was aware at the time it occurred, or which was previously resolved between the parties. The plaintiffs contend that Northrop should not be allowed to withhold privileged documents that might disprove its entitlement to such affirmative defenses, that is, documents that show that Northrop may not have made full disclosures to the Government. They argue that Northrop placed the First Review at issue when it contended that it had already disclosed its conduct to the Government.

We disagree. A party places privileged communications at issue when a party "affirmatively tr(ies) to use the privileged communication to defend itself or attack its opponent." *Certain Underwriters at Lloyds v. Fidelity and Cas. Co. of New York*, No. 89 C 0876, 1997 WL 769467 (N.D.Ill. Dec. 9, 1997), *cited in Trustmark Ins. Co. v. General & Cologne Life RE of America,* No. 00 C 1926, 2000 WL 1898518 (N.D.Ill., Dec. 20, 2000). In this case, Northrop is not saying that the proof that it fully apprised the Government of its actions is contained in the First Review, or that the First Review had anything at all to do with previous agreements between itself and the Government. The plaintiffs' speculation that something contained within the First Review might disprove Northrop's defense does not place the privileged communications at issue. The question of whether Northrop informed the Government of its actions when they were occurring depends on a review of communications between those two parties, not between Northrop and its lawyers. Thus, we find that Northrop has not made a subject-matter waiver of all privileged communications.

For the above reasons, we order Northrop to produce to the plaintiffs document 355

7

as well as the interview notes identified on the privilege log of AY working papers. It does not have to produce the other working papers identified on the privilege log. Plaintiffs' motion to compel is granted in part and denied in part. It is so ordered.

**ENTER:**

MICHAEL T. MASON
**United States Magistrate Judge**

**Dated: June 19, 2003**

G:\Opinions\89C6111.011